We'll now move to the second case on the calendar, that is United States v. Baez. All right. Good morning, Mr. DeCastro. You have ten minutes, but you reserve two minutes for rebuttal. Good morning. Good morning. Good morning. May it please the court. Cesar DeCastro for appellant Umberto Baez. Mr. Baez's conviction should be reversed because the totality of the circumstances established that he did not receive the effective assistance of trial counsel. I'd like to use the time I have today just to address, to the extent that I can, counsel's most egregious error in our opinion. At a minimum, the Sixth Amendment required trial counsel to interview potential exculpatory witnesses. The government, in its brief, does talk a lot about this issue, but talks about calling these witnesses. I think there's a step before that that this court needs to address, which is that the existence of these witnesses were provided to the defense counsel four months prior to trial. Can I, even before that, I mean, look, often we don't, on direct appeal, hear arguments like this because we think it's better to have the lawyers involved have an opportunity to respond. Why isn't that the case here? We've not heard from Mr. Gordon. We've not heard from Mr. Herman about the various allegations and accusations leveled against them. Wouldn't we benefit from hearing, wouldn't the district court benefit from hearing that? And then we would have a better record to decide these things on appeal? Certainly an option for the court, Your Honor. I think we make that clear in our brief. The government does as well. I'm sorry, Your Honor? So at a minimum, and I think the government concedes this point, they conceded this below, and I believe on appeal as well, that at a minimum it would confirm a fact. One fact, that Mr. Baez had been a cooperating or informant, depending on the definition that you want to give to it, with the Dominican authorities in the past. At some time. But that was in 1990, right? Well, that remains to be seen. So shouldn't we let the trial court develop the record on that point and on the documents that the government offers that they say provide a perfectly reasonable explanation for why counsel might have made a strategic decision not to pursue those witnesses? None of that is, according to you, properly in the record. So the court could certainly remand this for more fact finding. It's obviously an option. No, we would, you would bring a 2255 option. Correct. Yes, Judge Walker, or direct us to pursue it in a 2255, which would be fine. But I think the record itself is clear here that the government provided, well, let me backtrack. The defense was provided by, the defense counsel was provided by his client with potential exculpatory witnesses. I don't know what strategic, I can't think of any sound strategic decision to not interview those witnesses. Well, if the client, this is purely hypothetical, but if the client said to the lawyer, but I stopped working for the D.R. authorities in 1999, long before the alleged conspiracy, that might be a good reason not to waste the time talking to somebody who's going to establish a fact that has no bearing on the charges. That would be a good reason, Judge Sullivan, for sure. However, then there would not have been discussions throughout this trial about Rule 15, about depositions, about why his client couldn't afford for Mr. Herman to travel to the Dominican Republic to do these interviews. That may well have just been a careful trial judge making a record that every opportunity was afforded. Certainly, but what's clear from a careful trial judge that he provided all these opportunities, that defense counsel didn't take any of those opportunities. Perhaps for a good strategic reason. I think that would be, Your Honor, extreme speculation when at least the government concedes here that the witnesses, at least one of those witnesses, would confirm what was their sole trial defense. Their sole trial defense, that he was a cooperating witness with the Dominican authorities in the past, and it would tend to credit more that he would, especially an individual who had never been arrested that he was continuing to cooperate in the future. At least one of those witnesses met with the defendant during the conspiracy time period. So I think if the court looks at the record as it is, certainly the court has the opportunity to direct a 2255 or remand it and not consider it, but I think that this, and it's not just this issue, I don't need to educate this court regarding what a criminal trial looks like or feels like, but no two trials are the same, but all criminal trials share at least one common characteristic, and it is a rigorous test of the government's allegations, an adversarial test, a confrontation. Counselor, you don't offer in your briefing any examples of motions you contend should have been made, objections that should have been made, evidence that should have been objected to? Well, one example. How can we find that the result likely would have been different? Well, here's one, and I thought about that, of course, and the government made that point, Your Honor, that what would I have done different if I was defense counsel in the case at trial? Perhaps I would have teed up this motion, this issue, as a motion to eliminate, affirmatively to the court regarding these witnesses. If, in fact, my client could not afford to take the depositions, which is what he said at trial, I would have potentially invoked 15D. I would have asked. I would have discussed with the government. But don't we kind of have to know what these witnesses would say and whether that's material or even relevant? I mean, it's unclear to me that some of this testimony would even be coming in. I mean, if it talks about ancient history, I'm not sure why it would be even relevant. It's unclear. The government's interviews of the witnesses were not talking about ancient history, Judge Sullivan. They were talking about the facts of this case, and the witnesses were equivocal at times. But if it's unclear, how can you show a probability that the result would have been different? It undermines the outcome here. It undermines that the defendant had a lawyer that was simply present, that didn't do certain things that any other defense counsel in his or her position would have done. This was a case in which your client was basically adopting the facts of the case and just saying, but I was cooperating. In other words, everything involved in the conspiracy he agreed to, basically. So that's the normal situation where counsel is trying to poke holes in the government's case. In fact, you were reinforcing the government's case with the exception of the informant aspect of it. And so it's very different from most cases when lawyers are, you would expect lawyers to do more in the way of the defense. They were accepting most of the facts, the defense lawyers here. I'm sorry, Judge Walker. I mean, what I would have expected defense counsel to do is focus on that one trial strategy. And that is, if it was to develop a record that informants, number one, the jury didn't even hear about informants in the Dominican Republic that sometimes they don't cross over and are in the United States or have any contacts with the Drug Enforcement Administration. None of that was developed. No questions. He had plenty of opportunity to do that with every single witness, to try to develop what could have been something to corroborate what his client was going to testify about. But it might have opened the door to something that would have slammed that shot, which is that it would have presented witness on the stand who said he never had permission to do this. He never was cooperating with respect to the charge conduct, which would have been worse, wouldn't it? It would have been worse, except the government concedes that there is at least one witness that would have affirmed that he was a cooperating witness at some point. But if the next question to that witness was, and was he a cooperating witness at the point relevant to this indictment, and the answer was emphatically no, it would seem to me calling that witness would be counterproductive. And that's precisely why counsel should have said what he was going to do, which is go and interview the witnesses. These, not only did his client provide the information, but the government provided at least one witness as a Brady witness. For him to just not do it was completely improper. But so how are you, as your client, prejudiced by us dismissing and saying let's see what happens in the 2255? What's the harm? There is no harm except more delay when I believe that this record is clear that counsel did not meet the standards in this circuit and this country for defense counsel to vigorously defend his or her client. And Judge Walker, you're right. This was unique in the sense of saying, well, I will go along. And he opened on that. You're going to hear that I'm not going to have a lot of questions. More than go along. Yeah. Well, no, what I say is I'm going to go along with the prosecution's case. I agree with most of it. But there is a line where you are then praising the prosecution's case and at the same time then cross-examining their cooperating witnesses. But what he did was he opened, opened meaning did an opening statement, making promises to the jury about what the evidence he expected will show. And he hadn't investigated the evidence yet. But he put his client on. I mean, he basically opened saying this whole case comes down to intent. And he put his client on to testify to intent. Correct. And but. The jury obviously didn't believe it. They didn't believe it. But if he had investigated perhaps those witnesses, and as Judge Sullivan was commenting, if in fact those witnesses were to provide certain facts, he may have made a different recommendation to his client because, of course, his client makes the choice in terms of his testimony. But he might have been armed. He might have been. But that's speculation. I mean, you have to show that there was some prejudice, right? So it seems to me you're asking us to speculate that there was prejudice. I'm asking this court to say that when a defense counsel is faced with Brady witnesses, potential Brady witnesses, and in fact has been advised by the government that one of those witnesses is a potential Brady witness, that you have at least the obligation to interview that person. At least interview the person. Always, even if there might be documents that make it pretty clear that the witness is going to be more harmful than helpful. So let's talk about. Which is what the government contends. And they do contend that. And what they're pointing to is interview reports. DEA six reports. We call them the sixes. Okay. Well, that is an interview being done from the government's perspective. It also depends on what the agent writes down, doesn't write down. This is why a defense counsel must interview those witnesses as well. It doesn't matter what a witness necessarily says in front of three, four, five, six government agents versus a separate interviewer. Are you asking for a rule that failure to interview potential witnesses per se in effective assistance? I think that goes too far. It's not potential witnesses. We're talking about Brady witnesses. Witnesses that may lead to the defendant's innocence. How can a defense counsel not interview or try to interview? And Judge Weinstein, he gave this counsel multiple opportunities. So your position is failure to interview a Brady witness is a per se ineffective assistance of counsel? Yes. I think that falls far below professional standards under the Sixth Amendment. Well, you've got two minutes to rebuttal. We'll now hear from Ms. Berenson. Good morning, Your Honors. May it please the court. My name is Nomi Berenson. I represent the United States appellee in this case. Appellant argues that he received ineffective assistance of counsel. The argument he makes is implausible on its face and inconsistent with the evidence in the record. The court should rule that there was no denial of the right to counsel. Resolution of this issue here is beyond any doubt. Really? I mean, in other words, so I've been asking Mr. DeCastro why we shouldn't just allow this to percolate through a 2255. You're saying that there's no need to do that? There's no possibility of facts being developed in the 2255 that would support an ineffective assistance claim? Your Honor, respectfully, in this case, the government's evidence and the prosecution of the defendant was so overwhelmingly strong that the government does contend that there could be no additional fact-finding that would bear on the court's determination and that prejudice here is simply a burden that the appellant cannot satisfy. But you are trying to introduce documents into the record that were not part of the record below, and you can't do that absent extraordinary circumstances, can you? Respectfully, Your Honor, in all meaning, in a meaningful sense, the documents are all part of the record. There's no question as to access to the documents by defense counsel. They were produced in advance. There's no challenge to their authenticity or accuracy. The government would contend then in a meaningful sense. They are a properly part of the record. I could cite- One of the problems that you face in this kind of situation is when a defendant testifies, all of a sudden the jury's thinking about the case shifts from has the government proven its case beyond a reasonable doubt to is the defendant lying or not? And here, I think what your adversary is trying to argue is that there might have been a witness who could corroborate the defendant in his testimony at trial. And therefore, for that reason, it was ineffective assistance not to interview the witnesses, particularly any witness that's referred to as under a Brady motion. Yes, Your Honor. For context. Respectfully, that witness in particular, as set forth in the summary of the interview that was made of him by the government, shows that he clearly contradicted the defendant's testimony in theory of the case, which, by the way, the defendant had wedded himself to prior to trial by coming in with prior counsel. The problem here, as Judge Sullivan has pointed out, is that this is a case that is dependent upon non-record information evidence. And, you know, it's involved here. It's being produced. And the basic process that we use is to let everyone proceed by 2255, and then lawyers who are under attack come in and they can explain why they did what they did. And we have a very full record rather than this approach that you're urging on us now, which is to sort of glean information from documents that are not in the record. Well, Your Honor, if I could say... Do you have any real objection to letting us go forward to a 2255 situation? Your Honor, respectfully, the government can... Apart from the fact that it might take up more of your time. Respectfully, this is one of those rare cases, Your Honor, in which we believe that it is most appropriate to resolve the claim on direct appeal. So what was the reason for not interviewing the witnesses? Do you know? What was the reason for the lawyer not even attempting to interview the witnesses, that you guys identified as potential exculpatory witnesses? What's the reason? Your Honor, it would potentially be speculation on my part. Yeah, clearly. And so it seems to me that what you're saying... I mean, Mr. Ducascio is asking for a per se rule that if you don't interview somebody who's listed as a potentially exculpatory witness, that's ineffective assistance. You seem to be saying that where there's a strong case, then there's no need to interview exculpatory witnesses. And I think each one is a pretty indefensible position. Your Honor, no, the government is not seeking a rule of that. Okay. So you're saying we don't need to develop any further facts here or we don't need to allow the defendant to develop facts through 2255 because why? Your Honor, because of the undisputed facts and evidence that preclude the appellant from meeting his prejudice burden, that he sent directions to a cooperating witness who was cooperating unbeknownst to him to delete incriminating text messages, that he spoke in code, that he invested money of his own to the tune of $1,700 into the scheme. Is all of that inconsistent with the defendant's theory that he was doing that because he was cooperating with the Dominican Republic to try to keep drugs from being sent from there to the U.S.? Your Honor, if I could continue with just another fact. So, for example, the very fact that after he had confirmed that the cocaine had arrived in the United States and was not intercepted by law enforcement in the Dominican Republic, he testified and agreed that he never at any point contacted U.S. law enforcement. To the contrary, recordings were played for the jury in which they heard the excitement and urgency with which he ordered the cooperating witness to forthwith get down to Florida and get that container. At that point, that completely flies in the face of his testimony, even taking him at face value. Is this a witness, Ornelas? Yes, Your Honor. That's the guy that under his theory he was trying to make sure that he was arrested as he was cooperating with the government. So that would have been consistent with his purpose, to order this guy around and have him do more. I mean, I'm not saying that I necessarily buy the defense, but that's beside the point. But that's the point he's making here. And yet in his post-arrest statement, he never said, wait a minute, call my handler. I'm working with law enforcement. Just call someone in the DR. Here's his name and number. None of that information came out. It's simply implausible what appellant is asking this court to adopt. But, I mean, look, there is, I mean, Mr. DeCastro today's argument is identifying and focusing on one particular allegation of ineffective assistance. There's half a dozen others. And most of the arguments you've just made don't discuss those at all. I mean, if Herman couldn't hear a word of what was taking place in court, isn't that a problem? There's no indication at all that that's the case. I'm just saying, I mean, there's allegations that he couldn't hear, allegations that he provided inadequate sentencing advocacy, allegations that he failed to make or oppose, motions in limine. I mean, there's a lot going on here. It seems to me that there's likely going to be a 2355 anyway, don't you think? Your Honor, with the sort of unspecified allegations here of, you know, unclear which motion should have been made and which motion should have been opposed and which objections should have been lodged and the like, it's really impossible for the government to respond to that type of generalized claim. I would note- That's why we typically don't do these on direct appeal. So, I mean, I think we used to do them more often on direct appeal, and the Supreme Court sort of slapped us down for it. So you're saying we should nonetheless be bold in this case and issue the need for a 2355, resolve all this now, and that then shuts the door on any of these ineffective assistance claims going forward, even if there's additional evidence. Your Honor, I believe that this case is not dissimilar from U.S. v. Aulet, A-U-L-E-T, 618, Fed 2nd, 182, 186, in which this court addressed 3500 material, which was similarly situated to the Rule 16 statements here at issue, in that it was not admitted as an exhibited trial, but it was considered by this court to be properly before the court, and the court determined that because of the overwhelming strength of the government's case, there could have been no prejudice. And in that- What's the year on that case? That case is 1980. There's also a more recent- In 2003, the Supreme Court is saying basically that there's few ineffective assistance claims that are going to be capable of resolution on direct appeal. Yes, Your Honor. You're saying this is one of the few, and you're pushing us back to a 1980 case. You got anything later? Yes, Your Honor. This court in 2014, citing back to Aulet in United States v. Aulet, A-L-M-U-T-T, 588, Federal Appendix 45, similarly found that it was appropriate to decide the issue on direct appeal. To the extent that the court has concerns about whether or not the government is seeking a broad per se rule here, it is not. Defense counsel could easily have determined that further pursuing interviewing the witnesses who were identified based on their initial interviews with the government would have precluded him from calling his witness to the stand and raising his defense because it would have been suborning perjury. Maybe, but we don't know that. Right? I mean, would it not be useful to hear what Gordon or Herman in the case of the trial witnesses would have to say? Well, except that ultimately it's the defendant's decision as to whether or not he testifies either way. No, I understand what his decision to testify. I'm talking about the decision to call other witnesses who might corroborate the testimony. So, all right. Well, let's hear what Mr. DeCastro has to say in two minutes of rebuttal. Thank you. Thank you. Thank you, Judge. Two points in my time. I think first going to a question you asked, Judge Sullivan, which was there's a half a dozen other things. I didn't use my time here. No, no, I understand that. You had limited time. No, of course. But one thing I did want to get to was defense counsel's lack of sentencing advocacy. To me, it was extraordinarily, well, let me back up. Didn't he marshal 30 some odd letters in support of the defendant and argue about his character and all of which relate to 3553 factors? Well, the letters relate to one factor, his history and characteristics. And he didn't marshal anything. The client's family provided letters and he provided them to the court. He sent in his sentencing submission a very short letter essentially arguing and labeling it a Rule 29, that he was reopening his Rule 29 motion, arguing innocence. He's there to put that aside for the moment and argue why his client should not receive more than 10 years, the mandatory minimum in the case. What factors did he really discuss? Did he discuss Mr. Baez's age, his lack of criminal history? The fact that he would likely not recidivate given his age and lack of criminal history. Did he go through any of the other sentencing factors? Is doing a bad job the same thing as ineffective assistance? I think you must argue 3553A to be actually advocating sentencing in federal court. I don't know how it helped his client to argue innocence and continue to argue the case when it was what is the appropriate sentence that would deter him potentially in the future. But what arguments or what facts were left on the table? In other words, there's a PSR that's pretty detailed. There are letters from family members which give a sense of his character. So what are the things that should have been stressed and weren't stressed? And why is that ineffective assistance? Sure. I don't think it's sufficient. I mean, maybe if the bar is this low that all I need to do as defense counsel at sentencing is say, family, give me letters. I'm going to put them in and I'm going to repeat my arguments from my Rule 29 or my summation. I fear for sentencing advocacy in this circuit because he literally did nothing here in terms of sentencing advocacy. We, Marshall, we're the masters. It's the rule that the performance has to be so deficient that effectively he was denied a fair trial. Certainly. Or a fair proceeding in sentencing. I think that Judge Weinstein was very concerned about what was coming forward. I think he forecasted this when he said that or he commented that if we all do what we have to do, I'm paraphrasing, if we all do what we have to do, we can avoid a potential ineffective assistance of counsel claim here. I think the court was concerned about it and I don't think. But then he was talking about the hearing, wasn't he? He was talking about the hearing, but I think he foretold more. And I didn't think what the court expected here were things like some of the things that defense counsel did and did not do. But that's speculation on your part, isn't it? I don't think it's speculation. I think the court went out of his way to allow for this defense counsel to interview the witnesses. He opened the courtroom. He provided a court reporter to be able to do it telephonically. The government objected sort of rigorously to it. This is past time, Your Honor. And he said it's not. I'll tell you when it's past time and you can interview the witnesses on Friday. Counsel just didn't do it. I don't think that's sufficient. I see I'm over my time. Thank you. Thank you both. We will reserve decision.